**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DIANE BRISCOE, <u>et al.</u>** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 12-5176** |
| **OFFICER STEVEN JACKSON, <u>et al.</u>** | : | |

**Goldberg, J.**                                                                      **February 24, 2014**

## <u>MEMORANDUM OPINION</u>

Plaintiffs, a police officer and her sons, have brought a civil rights action against Defendants, the Borough of Upland and two of the Borough's police officers, under 42 U.S.C. § 1983. Plaintiffs allege that Defendants engaged in an unlawful seizure and malicious prosecution in violation of the Fourth Amendment and state law. Presently before the Court is Defendants' motion for summary judgment. For the reasons that follow, this motion will be granted with respect to the federal claims, and the remaining state law claims will be dismissed without prejudice, to be refiled in state court.

## I.      <u>FACTUAL AND PROCEDURAL HISTORY</u>[1]

On the evening of September 19, 2010, Plaintiff, Diane Briscoe (hereinafter "Briscoe"), a police officer with the City of Chester Police Department,[2] along with her two sons, Plaintiffs Jonathan and Alton Briscoe, entered a residential property at 23 Second Street, Upland, Pennsylvania. The owner of the residence, Deborah Robinson, had contacted Briscoe and requested that she conduct a paranormal investigation on the premises. Briscoe had conducted other paranormal investigations in the past, and agreed to do so for Robinson. Robinson

---

[1] All facts recited herein are undisputed unless otherwise noted.

[2] While Diane Briscoe was an active police officer at the time of these events, she retired from the City of Chester Police Department in August of 2012. (Diane Briscoe Dep., Doc. No. 13-2, p. 9.)

provided Briscoe with a key and granted her permission to enter the home.  (Diane Briscoe Dep., Doc. No. 13-2, pp. 39-43, 50-51.)  While it should be self-evident that paranormal investigations are not conducted as part of normal police practices, to be clear, Briscoe was not present at this residence as part of her duties as a police officer, but was instead on a private business assignment.

The property at 23 Second Street had recently suffered damage from a fire and had been deemed uninhabitable by the Borough of Upland.  (Officer Jackson Dep., Doc. No. 13-8, p. 13.)[3] Accordingly, no one was permitted to enter the residence between the hours of 6:00 p.m. and 7:00 a.m., and the Borough of Upland placed notices of the restriction on the entrances to the home.  (Doc. No. 13-4.)  While Robinson had informed Briscoe that the home had sustained a fire, she did not inform her that no one was permitted in the home at night.  (Deborah Robinson Dep., Doc. No. 13-3, pp. 16-17.)  The parties agree that the condemnation notices that had been posted at the property by the Borough had been partially removed, although there is some dispute as to whether any legible part of the notice remained on the night in question.  (Diane Briscoe Dep., pp. 43-44; Officer Jackson Dep., pp. 13-14.)

Diane, Jonathan and Alton Briscoe entered Robinson's home for the paranormal investigation sometime after 7:00 p.m. on September 19, 2010.  They were accompanied by two other individuals, Joanna Melnyk and Michael Miller, who are not parties to this action.  (Diane Briscoe Dep., pp. 60-61.)  Around 8:00 that evening, one of Robinson's neighbors, who knew

---

[3] While Plaintiffs stated in their depositions that they do not necessarily believe that the Robinson property was condemned by the Borough of Upland, they do not present any evidence to the contrary.  (See, e.g., Diane Briscoe Dep., pp. 51-52.)  Defendants, on the other hand, have presented deposition testimony and documentation to support their assertion that the home was condemned.  (See Doc. No. 13-4; Officer Jackson Dep., pp. 13-14.)  Therefore, we find this fact to be undisputed.

that the home had been deemed uninhabitable, noticed someone in the back of the house and directed his wife to call the police.  (DeViato Dep., Doc. No. 13-7, pp. 10-12.)

Defendants, Officers Jackson and Carr of Upland's Police Department, were on special detail on the night in question due to a number of recent burglaries in the Borough.  (Officer Carr Dep., Doc. No. 13-9, p. 8.)  The Officers arrived at the scene shortly after receiving the report from the neighbor's wife that there was a potential burglary in progress.  (Officer Jackson Dep., p. 7.)  Officer Carr testified at deposition that he had been called to that residence numerous times in the past, and thus was familiar with the identity of the homeowners.  (Officer Carr Dep., p. 17.)

The Officers announced their presence at the home, at which point, Briscoe made her way to the front door.  (Diane Briscoe Dep., pp. 71-72.)  As the door was opened, the Officers had their guns drawn and told Briscoe to lie on the ground.  (Id.)  While getting on the ground, Briscoe repeatedly stated that she was a police officer and that she was conducting a paranormal investigation.  (Id.)  The Officers entered the home, which did not have electricity due to the fire, and ordered all other occupants, including Jonathan and Alton Briscoe, to come outside and lie down, also at gun point.  (Officer Jackson Dep., pp. 9-10.)  Upon entering the house, Officer Jackson noted that there were things strewn about, which he interpreted as evidence of a burglary.  (Id. at p. 12.)

The Briscoes were questioned by the Officers in front of the house, and it is undisputed that no one was handcuffed or physically contacted by the Officers, although Briscoe did allow her service weapon to be confiscated.  (Diane Briscoe Dep., pp. 76-77, 79.)  During the investigation, Briscoe told the Officers numerous times that she was a police officer and that she had the permission of the homeowner to be in the residence.  (Id. at pp. 92-93.)  Plaintiffs

concede that while they were being questioned, Briscoe raised her voice at the Officers, and Alton Briscoe raised his voice and swore at them.  (Id. at pp. 72-75, 88.)  After approximately twenty to thirty minutes, Plaintiffs were permitted to leave the scene.  (Id. at pp. 104-05.)

Plaintiffs acknowledge that, at some point, the fact that Briscoe was a police officer was investigated by Defendants, as she later discovered that a call was made to her chief of police. However, it is also undisputed that no one contacted Robinson to ascertain whether she had given Plaintiffs permission to be in the home, or if she had informed Plaintiffs of the property's condemned status.  (Id. at pp. 22-23; Officer Jackson Dep., p. 13.)  The Briscoes were mailed citations following the incident, charging them with criminal trespass and disorderly conduct. (Jonathan Briscoe Dep., Doc. No. 13-5, p. 38.)  These charges were subsequently dismissed.  (Id. at p. 58.)

On September 11, 2012, Plaintiffs initiated the present action, bringing claims for the following: (1) unlawful seizure in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Officers Jackson and Carr;[4] (2) Monell liability for failure to train, supervise and discipline under section 1983 against Upland Borough; (3) failure to investigate against Officers Jackson and Carr under section 1983; (4) assault and battery against Officers Jackson and Carr; and (5) malicious prosecution under section 1983 and state law against Officers Jackson and Carr.  (Compl. ¶¶ 19-37.)  On June 4, 2013, Defendants filed a motion for summary judgment on all counts.  The motion is now fully briefed and ready for disposition.

---

[4] Counts I through III of Plaintiffs' complaint are largely indistinguishable.  The language used in the headings of the complaint are as follows: (1) "Right of people to be secure in their persons, 4th Amendment" (Count I); (2) "false arrest" (Count II); and (3) "deprivation of federally-protected rights[,] 4th Amendment" (Count III), all brought pursuant to section 1983.  Counts I through III have all been brought against Officers Carr and Jackson, and all appear to assert the same claim for unlawful seizure in violation of the Fourth Amendment.  Therefore, we will conduct one analysis to address Counts I through III of the complaint.

## II.    <u>STANDARD OF REVIEW</u>

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that judgment is appropriate as a matter of law. FED. R. CIV. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006).  The non-moving party cannot avert summary judgment with speculation or conclusory allegations, but rather must cite to the record.  <u>Ridgewood Bd. of Educ. v. N.E. for M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999); FED. R. CIV. P. 56(c).  On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party.  <u>Anderson</u>, 477 U.S. at 256.

## III.    <u>ANALYSIS</u>

Defendants argue that, even accepting all evidence in the light most favorable to Plaintiffs, they have not established that an unlawful seizure took place or that any other constitutional right was violated.  According to Defendants, Officer Jackson and Officer Carr made an investigative stop at the condemned property, and they had reasonable suspicion to do so.  Defendants further argue that there was no failure to investigate that could reach the level of a due process violation, nor was there an assault and battery or malicious prosecution. Alternatively, Defendants assert that, even if a constitutional violation took place, summary judgment should be granted because Officers Jackson and Carr are protected by qualified

immunity.  Finally, with regard to the Borough of Upland, Defendants urge that Plaintiffs have

not presented any evidence of a policy or custom that would establish <u>Monell</u> liability.

### A.  Qualified Immunity – Officers Jackson and Carr

Government officials are extended qualified immunity in actions brought under section

1983 "insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  <u>Messerschmidt v. Millender</u>, 132 S. Ct.

1235, 1244 (2012) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)).  "[W]hether an

official protected by qualified immunity may be held personally liable for an allegedly unlawful

official action generally turns on the 'objective legal reasonableness' of the action, assessed in

light of the legal rules that were 'clearly established' at the time it was taken."  <u>Id.</u> at 1245

(quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987)).  A court must engage in a two-part

inquiry to determine if qualified immunity applies: (1) "whether the facts that a plaintiff has

alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at

issue was 'clearly' established at the time of defendant's alleged misconduct."  <u>Pearson v.</u>

<u>Callahan</u>, 555 U.S. 223, 232 (2009) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).

### 1.  Unreasonable Seizure

Counts I through III of the complaint assert claims against Officer Jackson and Officer

Carr for unreasonable seizure in violation of the Fourth Amendment.

"The Fourth Amendment is not, of course, a guarantee against <u>all</u> searches and seizures,

but only against <u>unreasonable</u> searches and seizures."  <u>United States v. Sharpe</u>, 470 U.S. 675,

682 (1985) (emphasis in original).  A person has been seized under the Fourth Amendment "only

if, in view of all the circumstances surrounding the incident, a reasonable person would have

believed that he was not free to leave."  <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980).

In <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), the United States Supreme Court recognized that police may make an investigatory stop, a limited seizure under the Fourth Amendment, if they have reasonable suspicion—that is, specific and articulable facts supporting the inference that criminal activity is occurring. <u>Id.</u> at 20-21.  Investigative stops "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." <u>Sharpe</u>, 105 U.S. at 684 (quoting <u>Florida v. Royer</u>, 460 U.S. 491 (1983)).  If an investigative stop does not meet the brevity requirement, it may be transformed into a de facto arrest, which requires a showing of probable cause. <u>United States v. Johnson</u>, 592 F.3d 442, 447-48 (3d Cir. 2010) (citing <u>Sharpe</u>, 470 U.S. at 685).

There is no bright-line time limit that transforms an investigative stop into a de facto arrest. <u>Id.</u>  The primary consideration is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the [suspect]." <u>Sharpe</u>, 470 U.S. at 686.  For example, the United States Court of Appeals for the Third Circuit has found stops exceeding one hour to meet the brevity requirement of an investigative stop, where the delay was due to factors outside the police officer's control and the officer was diligent in his attempts to investigate. <u>United States v. Leal</u>, 235 Fed. Appx. 937, 942 (3d Cir. 2007).  A court assessing the length of an investigative stop should not engage in unrealistic second-guessing. <u>Sharpe</u>, 470 U.S. at 686.  "The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or pursue it." <u>Id.</u> at 687.

Additionally, the fact that guns are pointed at a suspect, or even that a suspect is handcuffed, does not automatically transform a stop into an arrest, so long as their use is justified

under the circumstances.  Johnson, 592 F.3d at 448; Baker v. Monroe Twp., 50 F.3d 1186, 1193

(3d Cir. 1995).  As the Supreme Court recognized in Terry,

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating . . . is armed and presently dangerous to the officer or to others, it would . . . be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

392 U.S. at 24.

While Plaintiffs argue that Defendants did not have probable cause to make an arrest, they fail to address Defendants' primary argument—that Plaintiffs were never arrested at all, and that the twenty-to-thirty minute interaction constituted an investigatory stop requiring only reasonable suspicion.  We agree with Defendants, and find as a matter of law that Plaintiffs were subjected to an investigatory stop, not an arrest.

All parties acknowledge that Plaintiffs were required to remain at the property for approximately twenty to thirty minutes, and then were permitted to leave.  As previously noted, stops more than twice this length have been found to not run afoul of the brevity requirement.  We also find that Defendants acted diligently during that time in investigating the reason for Plaintiffs' presence in the home.  Defendants conducted a full search of the darkened house to ensure that all persons had been removed from the premises.  They proceeded expeditiously, searching the house for evidence of a burglary and attempting to elicit information from Plaintiffs, who acknowledge raising their voices and cursing at Defendants, which likely made the investigation more difficult and time consuming.  Further, Defendants confiscated Briscoe's service weapon during that time, and also made a call to her chief of police to verify her statement that she was a police officer.  Plaintiffs have not presented any evidence to suggest that Defendants were dilatory in their investigation.

Plaintiffs also acknowledge that they were not handcuffed or physically contacted by Defendants at any time during the stop, and the fact that Defendants pointed their guns at Plaintiffs does not transform this stop into an arrest**.**  It is unrefuted that prior to reaching the property, Defendants were informed of a probable burglary in progress.  Defendants also testified that a number of burglaries had occurred in the neighborhood in question in recent months.  The house did not have electricity, adding to the potential danger to the officers.  Under these circumstances, Defendants were justified in drawing their weapons when investigating the home for the purpose of officer safety.

We also find as a matter of law that the investigatory stop was based upon reasonable suspicion and did not run afoul of the Fourth Amendment.  In reviewing the constitutionality of an investigative stop, courts examine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  Terry, 392 U.S. at 19-20.  Plaintiffs were present in a property that had been condemned by the Borough of Upland, and that prohibited anyone from inhabiting the home between the hours of 6:00 p.m. and 7:00 a.m.  A neighbor had called 911 to report a potential burglary in progress, and police had responded to a number of burglaries in that neighborhood in recent months.  Defendants had also been called to that property in the past, and through those interactions, were aware that Plaintiffs were not the homeowners.  Therefore, we find that Officers Jackson and Carr had specific and articulable facts supporting their inference that criminal activity was being committed.  There is no evidence on the record to suggest that the Officers' actions went outside the scope of the reason for the stop.  Accordingly, we find that the investigatory stop was proper, and thus, no reasonable jury could conclude that the stop violated Plaintiffs' rights under the Fourth Amendment.

## 2.  Failure to Investigate

Plaintiffs also assert that "Officers Jackson and Carr failed to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime had been committed at all before invoking the power of a warrantless arrest and detention" in violation of Plaintiffs' constitutional rights.   (Compl. ¶ 33.)   We disagree and find that Plaintiffs have not presented evidence of a failure to investigate by police that rises to the level of a constitutional violation.

Plaintiffs essentially argue that Defendants were negligent by failing to take "reasonable" steps to investigate whether Plaintiffs had been trespassing.   "Negligence by a public official, however, is not actionable as a due process deprivation of a civil right."   Martin v. Anderson, 2008 WL 4761734, at *9 (E.D. Pa. Oct. 29, 2008) (quoting Wilson v. Russo, 212 F.3d 781, 789 n.5 (3d Cir. 2000)).   To the contrary, "[t]o establish a due process violation for failure to investigate, the plaintiff must show the defendant acted intentionally or recklessly" in a manner that shocks the conscience.  Id. at *9 n.8; Eckman v. Lancaster City, 742 F. Supp. 2d 638, 653 (E.D. Pa. 2010).   "[A]n officer does not have to investigate independently every claim of innocence . . . [but] an officer cannot look only at evidence of guilt while ignoring all exculpatory evidence."   Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000).

The evidence presented by Plaintiffs does not establish that Defendants acted intentionally or recklessly in their investigation, or that their conduct shocked the conscience. Plaintiffs argue that Defendants should have: (1) accepted Briscoe's assertion that she was a police officer; and (2) accepted and/or investigated Briscoe's assertion that she had permission from the homeowner to be on the property.   However, Plaintiffs admit that Defendants did, in fact, contact Briscoe's chief of police in an attempt to verify that she was a police officer.

10

Further, Briscoe's status as a police officer should have no impact on the investigation of whether or not a crime had been committed.   She was not in the darkened, condemned house on official police business.   Rather, Briscoe was present in a property that had been officially designated as uninhabitable while undertaking a private business matter.   Given the potentially dangerous situation with which Defendants were confronted, there is absolutely no reason for them to accept, at face value, Briscoe's protests that she was a police officer.

Finally, although police did not contact the homeowner, Deborah Robinson, to ascertain whether she had given Plaintiffs permission to be on the premises, the police were aware that the house had been deemed uninhabitable by the Borough of Upland.   Plaintiffs have failed to present any evidence to suggest that Robinson had the authority to overrule that determination by simply granting someone permission to be on the premises after dark.   To the extent that Plaintiffs argue that Defendants should have spoken with Robinson in an effort to determine Plaintiffs' knowledge of the property's condemned status, failure to do so would be, at most, negligent, and does not rise to the level of an intentional or reckless failure to investigate that would shock the conscience.   Therefore, we find that Plaintiffs have not presented evidence of a constitutional claim for failure to investigate.[5]

### 3.  Malicious Prosecution under Section 1983

"To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation

---

[5] We also note that the contours of a stand-alone claim for failure to investigate are not well-defined within this Circuit, particularly when it does not take place in the context of an arrest. Therefore, even if Plaintiffs had presented evidence of a constitutional violation for failure to investigate, we find that the right is not clearly established, such that Officers Jackson and Carr would be entitled to qualified immunity.

of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Morasco, 318 F.3d 497, 521 (3d Cir. 2003).  A constitutional claim for malicious prosecution stems from the Fourth Amendment, and it is "intended to redress the deprivation of liberty accompanying prosecution, not prosecution itself." DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005).  The Third Circuit has held that where the plaintiffs were only issued summonses, and were never arrested, never posted bail, were free to travel, and did not have to report to pretrial services, plaintiffs could not establish a deprivation of liberty, as required to establish liability under section 1983 for malicious prosecution.  Id.; see also Holmes v. McGuigan, 184 Fed. Appx. 149, 151-52 (3d Cir. 2006).  Attendance at trial does not constitute a Fourth Amendment seizure.  DiBella, 407 F.3d at 603.

As in DiBella, Plaintiffs were not arrested, never posted bail and were never held in custody.  They were mailed a citation for criminal trespass and disorderly conduct and were required to attend a court hearing.  To the extent that an investigatory stop could constitute a seizure for the purposes of a malicious prosecution claim, we have already determined that the stop was proper and based upon reasonable suspicion.  Therefore, we find that no reasonable jury could determine that Plaintiffs suffered a deprivation of liberty as a consequence of a legal proceeding, as required to establish a malicious prosecution claim under section 1983.

Because Plaintiffs have failed to present evidence of a constitutional violation, we find that Plaintiffs have not shown that Defendants violated a clearly established constitutional right. Qualified immunity is appropriate, and summary judgment will be granted in favor of Defendants on the above-mentioned counts.

**B.  <u>Monell Liability – Borough of Upland</u>**

A municipality may be held liable for its employee's violation of a citizen's constitutional rights under section 1983, although not on a <u>respondeat</u> <u>superior</u> theory of liability. <u>Monell v. Dept. of Soc. Servs. of City of New York</u>, 436 U.S. 658, 690-92 (1978).  To prevail on a <u>Monell</u> claim, a plaintiff must show a policy[6] or custom[7] created by a policymaker that caused the alleged constitutional violation.  <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing <u>Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 404 (1997)).  To establish causation, "there must be an affirmative link between the policy and the particular constitutional violation alleged."  <u>City of Okl. City v. Tuttle</u>, 471 U.S. 808, 823 (1985).

The Third Circuit has held that "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  <u>Montgomery v. De Simone</u>, 159 F.3d 120, 127 (3d Cir. 1998) (citing <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 (3d Cir. 1997)).

---

[6]A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986)).

[7]"A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'"  <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (quoting <u>Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 417 (1997)).

Plaintiffs have not presented any evidence that would go to whether a policy or custom was put in place by the Borough of Upland that caused a violation of Plaintiffs' constitutional rights. Although the complaint states that the Borough of Upland failed to properly train and discipline its officers, Plaintiffs have not identified any policy, custom or training procedure utilized by the Borough of Upland that caused a constitutional violation. Further, as previously discussed, Plaintiffs have not established that their constitutional rights were ever violated, which also prohibits liability under Monell. See Bowser v. Borough of Birdsboro, 2011 WL 4479596, at *3 (E.D. Pa. Sept. 27, 2011) ("Because the plaintiff has not demonstrated that her constitutional rights were violated, these [Monell] claims fail as a matter of law"). Therefore, summary judgment is appropriate on this claim.

### C. Supplemental Jurisdiction

A district court may decline to extend supplemental jurisdiction over a state law claim where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Whether supplemental jurisdiction will be extended under these circumstances is discretionary. Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009). Ordinarily, when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). If a district court decides not to exercise supplemental jurisdiction, it should dismiss the state law claims without prejudice. Kach, 589 F.3d at 650.

In the present case, summary judgment has been granted on all constitutional claims over which this Court has original jurisdiction. The interests of judicial economy, convenience,

fairness and comity will not be served by extending supplemental jurisdiction over the remaining assault and battery and malicious prosecution claims brought under state law.  Therefore, we decline to exercise supplemental jurisdiction, and will dismiss these state-law claims without prejudice, so they may be refiled in state court.

**IV.**    **<u>CONCLUSION</u>**

For the reasons stated above, summary judgment is granted in favor of the Defendants on all of Plaintiffs' claims under section 1983 for failure to present evidence of a constitutional violation and due to qualified immunity.  Because summary judgment has been granted in Defendants' favor for all claims over which this Court has original jurisdiction, we decline to exercise supplemental jurisdiction over the remaining state law claims.  These claims will be dismissed without prejudice.

Our Order follows.